# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 49249

| | |
|---|---|
| In the Matter of:  John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) ) **Filed: February 25, 2022** |
| Petitioner-Respondent, | ) ) **Melanie Gagnepain, Clerk** |
| v. | ) ) **THIS IS AN UNPUBLISHED** |
| JOHN DOE (2021-46), | ) **OPINION AND SHALL NOT** ) **BE CITED AS AUTHORITY** |
| Respondent-Appellant. | ) ) ) |

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Madison County.  Hon. David C. Hunt, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Law Office of Trent Grant; Trent Grant, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Amy Long, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Judge

John Doe (Father) appeals from the magistrate court's order terminating his parental rights to D.B. and M.B.  The magistrate court held that Father neglected the children, was unable to discharge his parental duties, and that termination is in the best interests of the children.  Father argues these holdings are not supported by substantial and competent evidence.  Because the magistrate court's findings are supported by substantial and competent evidence, the judgment terminating Father's parental rights is affirmed.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Father and mother (Mother) are married and have two children together, D.B. and M.B.[1] In February 2020, law enforcement was contacted due to an argument between Father and Mother regarding the care of M.B. Law enforcement responded, and Father told officers he was concerned about Mother's methamphetamine use and the presence of drugs in the home. Both children were subsequently removed from the home and placed in foster care. The magistrate court granted the Department of Health and Welfare (Department) temporary custody of the children. The magistrate court held an adjudicatory hearing and entered a stipulated order finding it was contrary to the children's best interests to be returned to live with Father and Mother. The magistrate court ordered a case plan for the parties as part of reunification efforts.

At a permanency hearing in February 2021, the Department asked the court to adopt a permanency goal of termination and adoption, and Father requested an additional three months to complete his case plan. The magistrate court declined to adopt the permanency plan at the hearing, but two months later, after seeing no improvement from Father, the court adopted the permanency plan. The magistrate court held a termination trial and subsequently entered an order finding by clear and convincing evidence that Father neglected his children, was unable to discharge his parental responsibilities, and that termination of Father's parental rights is in the best interests of the children.[2] The magistrate court entered a judgment terminating Father's parental rights to D.B. and M.B. Father timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater

---

[1]     Father has two other children from prior relationships; neither child is involved with this appeal.

[2]     Mother's parental rights were also terminated but are not at issue in this appeal.

quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *In re Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Father argues the magistrate court's decision to terminate his parental rights should be reversed. Father asserts the magistrate court erred when it found that he neglected his children, that he is unable to discharge his parental responsibilities, and that it is in the children's best interests to terminate his parental rights.

### A. Grounds for Termination

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

Idaho Code Section 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or

3

(e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117. Upon finding a statutory ground for termination, the court must also find that it is in the best interests of the child to terminate the parent-child relationship. I.C. § 16-2005(1). Both findings must be established by clear and convincing evidence.

The magistrate court found that Father neglected the minor children. Pursuant to I.C. § 16-2005(1)(b), neglect is a statutory ground for terminating parental rights. Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

Father challenges the magistrate court's finding that he neglected his children. The magistrate court found that Father neglected his children on three separate bases: Father failed to comply with his court-ordered case plan; was unable to discharge his parental responsibilities; and failed to provide proper care and control for his children.

Father conceded during the termination trial that he had not completed the case plan, stating, "I haven't worked your case plan to the full extent that you've asked me to, but I know what works for my life." Notwithstanding this concession, Father asserts that because the record reflects that he attempted to complete the case plan, the magistrate court's finding of neglect is not supported by substantial and competent evidence. Father's case plan required him to obtain and maintain safe, sober, and appropriate housing for himself and his children; complete a substance abuse evaluation and follow through with any recommendations; submit to random drug testing through the Department or approved treatment providers; obtain and maintain employment in order to provide financially for the needs of his children; cooperate and communicate with the Department and child advocate services on a regular and timely basis; participate in the weekly visitations with his children until further notice; engage and participate in a parenting course

4

approved by the Department and demonstrate the skills learned; demonstrate a consistent pattern of sobriety; and engage and participate in the prescribed domestic violence course recommended in his GAIN assessment and demonstrate the skills learned. The magistrate court found that Father failed to successfully complete the majority of the tasks in his case plan.

Father did not obtain housing. At the time of the termination trial, Father was living in his car and had been for over ninety days. Father testified that he was "not going into the apartment status anymore" and that he planned to build a home. Father further testified that he did not own any property to build on and that although he submitted a loan application, he had not been given any information that the application had been approved or for how much. Father testified that despite not owning property or being approved for a loan, he believed he could purchase a piece of property and build a home within six months. When asked what led Father to believe he could accomplish this, Father's only answer was "faith."

Father failed to attend several required substance abuse classes and counseling sessions and did not demonstrate a consistent pattern of sobriety. Although Father was sober for various periods of time throughout the case, Father missed multiple urinalysis drug tests, tested positive for methamphetamine and marijuana multiple times, and continued to use alcohol in the week leading up to the termination trial.

It is true Father completed some elements of the case plan related to employment and visitation. But he did not participate in the prescribed domestic violence course and, more than once, he was under the influence of methamphetamine in front of the children, including during visitation. There was testimony that Father slept during visitation, and when the caseworker tried to talk with Father about it, Father was verbally abusive and hung up on the caseworker.

Although Father completed some tasks in his case plan, he failed to successfully complete the majority of the assigned tasks. Thus, the magistrate court's finding that Father failed to comply with the case plan is supported by substantial and competent evidence.

To the extent Father challenges the magistrate court's finding that Father neglected his children due to his failure to provide proper care and control and inability to discharge his parental responsibilities, Father argues he did everything within his power to provide proper care and control and to be able to discharge his parental responsibilities. Beyond this conclusory statement, Father provides no argument or authority in support of this claim. This Court generally does not address issues not supported by cogent argument and citation to legal authority, even in a case

5

terminating parental rights. *Idaho Dep't of Health & Welfare v. Doe* (2018-24), 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018). Regardless, a review of the record provides substantial evidence in support of the magistrate court's findings.

The magistrate court found the children were without proper parental care and control necessary for their well-being because of the acts or omissions of Father, specifically, the children were subjected to living in a house where they were exposed to Father's regular drug use and domestic violence between Father and Mother. The magistrate court also found that the same behaviors and concerns (primarily illegal drug use, domestic violence, and housing instability) that brought the children into care in the first place persisted throughout the case for a period of over a year and a half and, as a result, Father and Mother demonstrated an inability to discharge their responsibilities to and for the children.

Father struggled with substance abuse through the entirety of the case. In January 2021 Father tested positive for methamphetamine. During the termination trial, Father admitted to using methamphetamine and testified that in April 2021, he nearly overdosed on methamphetamine in front of M.B. Despite being ordered to maintain sobriety, Father tested positive for alcohol at the termination trial.

Prior to being taken into the care of the Department, the children were exposed to Father's domestic violence against Mother. Father's pattern of domestic violence continued during the pendency of this case. In October 2020, eight months after the children were taken into the care of the Department, Father threw a glass at Mother, causing a significant injury to her eye. At the time of the termination trial, Mother was still receiving medical treatment for the injury and it is possible that Mother will suffer permanent vision loss as a result of the injury. Mother expressed concern that a similar incident might happen again in the future. Father admitted to having a history of domestic violence, both with Mother and a previous partner. Despite his repeated struggles with domestic violence, Father did not participate in the domestic violence course required by his case plan. Father also failed to obtain stable housing for the children.

As a result, the magistrate court's finding of neglect due to failure to provide proper care and control and inability to discharge parental responsibilities is supported by substantial and competent evidence.

In addition to providing a basis for neglect, the magistrate court also found that Father's inability to discharge parental responsibilities constituted a separate and independent statutory

6

basis for termination pursuant to I.C. § 16-2005(1)(d). The magistrate court found that Father demonstrated a sustained inability to provide safe housing free from illegal drug use and domestic violence and that inability will continue for a prolonged indeterminate period. The court further found that Father's inability to provide safe and sober housing will be injurious to the health, morals, or well-being of the children.

Father argues the magistrate court could only speculate that Father's inability to discharge parental responsibilities would continue and, therefore, the magistrate court's finding is not supported by substantial and competent evidence. This argument is unpersuasive. The magistrate court's finding was not based on unsupported speculations but rather, the evidence of Father's prior history and his conduct throughout the case. Father's continued substance abuse and his refusal to seek treatment for domestic violence support the magistrate court's finding that Father's inability to discharge his parental responsibilities would continue for a prolonged period.

Father asserts there is no evidence to support the magistrate court's finding that Father's inability to discharge his parental responsibilities would result in injury to the children. Father fails to show error in the magistrate court's finding. While in the custody of Father and Mother, the children were regularly exposed to domestic violence and illegal drug use. On at least one occasion, D.B. found a bag of methamphetamine in the family home. M.B. observed Father's near-overdose and immediately told Father she thought she lost him, indicating that M.B. understood the circumstances of the near-overdose. The children witnessed Father's domestic violence often enough that D.B. and M.B. would hide when Father and Mother would argue. D.B. told a social worker that his parents fought a lot and mimicked Father punching Mother in the face. When D.B. was taken into the care of the Department, he struggled with aggressive behavior. D.B.'s behavior improved after being removed from Father and Mother's care. This evidence supports the magistrate court's finding that Father's prolonged inability to discharge his parental responsibilities would result in injury to the children.

The magistrate court's conclusions that Father neglected the children on each of the three bases and, alternatively, that Father's inability to discharge his parental responsibilities will continue for a prolonged period and that inability will be injurious to the health, morals, or well-being of the child, are supported by substantial and competent evidence.

7

**B.      Best Interests of the Children**

Father also challenges the magistrate court's finding that termination of his parental rights is in the children's best interests, arguing that the record lacks specific evidence that termination of his parental rights is in the best interests of the children.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the children to terminate the parent-child relationship.  *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991).  When determining whether termination is in the children's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the children's care after the children are placed in protective custody, the improvement of the children while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law.  *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014).  A finding that it is in the best interests of the children to terminate parental rights must still be made upon objective grounds.  *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court's finding that terminating Father's parental rights to D.B. and M.B. is in the best interests of the children is supported by substantial and competent evidence.  At the time of the termination trial, the children had been in the Department's care for nearly twenty months.  When D.B. first came into the care of the Department, he struggled markedly with emotional regulation and anger and would frequently get in fights at school.  After undergoing therapy for nearly a year while in the care of the Department, D.B.'s ability to regulate his emotions improved greatly and his behavior at school improved.  D.B. continues to attend counseling to address impulsive behavior and anger regulation.  After D.B. was placed into the care of the Department, he was enrolled in weekly speech therapy and he progressed enough to have speech therapy suspended.

M.B. was about two years old when she entered the care of the Department but did not seem to be suffering from developmental delay.  Throughout the case, she has met all developmental milestones expected of children her age.  Nonetheless, M.B.'s exposure to Father's drug use was concerning to the magistrate court, particularly when Father nearly overdosed while M.B. was laying on his chest and M.B. thought she "had lost" Father.  M.B.'s foster parents enrolled her in two different preschools that meet twice weekly.  M.B. was assessed by a play therapist who determined M.B. was not in need of developmental services.  M.B. attends counseling as an emotional support.

8

Before D.B. and M.B. were taken into the care of the Department, they were repeatedly exposed to Father and Mother's drug use and Father's domestic violence against Mother. The children's foster parents provide a safe home environment free from domestic violence and illegal drug use, and the children have thrived in their care. The magistrate court recognized that Father loves his children but noted, as the Idaho Supreme Court has recognized, love does not always translate into the ability to discharge parental responsibilities. *In re Doe*, 157 Idaho 694, 703, 339 P.3d 755, 764 (2014). The magistrate court concluded that termination of Father's parental rights would give D.B. and M.B. a necessary sense of finality, normalcy, and permanency. The magistrate court's findings are supported by substantial and competent evidence.

## IV.

## CONCLUSION

The magistrate court's findings that Father neglected his children and is unable to discharge his parental responsibilities are supported by substantial and competent evidence, as is the magistrate court's conclusion that terminating Father's parental rights is in the children's best interests. Accordingly, we affirm the magistrate court's judgment terminating Father's parental rights.

Chief Judge LORELLO and Judge GRATTON **CONCUR**.